IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BRIANNA S., <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTHCARE, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [52] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING [54] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:18-cv-00672-DBB <br><br> District Judge David Barlow |

Defendant UnitedHealthcare Insurance Company moved for summary judgment[1] on all three causes of action in Plaintiff Brianna S.'s Complaint[2] for relief under the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff opposed Defendant's Motion for Summary Judgment[3] and Defendant replied in support.[4]

Plaintiff also filed her own motion seeking summary judgment[5] in her favor on all three of her causes of action. Defendant opposed Plaintiff's Motion for Summary Judgment[6] and Plaintiff replied in support.[7]

---

[1] Defendant's Motion for Summary Judgment, ECF No. 52, filed under seal December 10, 2019.

[2] Amended Complaint, ECF No. 5, filed September 24, 2018.

[3] Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 60, filed January 21, 2020.

[4] Defendant's Reply in Further Support of Motion for Summary Judgment, ECF No. 69, filed under seal February 4, 2020.

[5] Plaintiff's Motion for Summary Judgment and Memorandum in Support, ECF No. 54, filed December 10, 2020.

[6] Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 63, filed under seal January 22, 2020.

[7] Plaintiff's Reply and Memorandum in Further Support of her Motion for Summary Judgment, ECF No. 67, filed February 4, 2020.

Defendant also filed the material constituting the complete administrative record (Administrative Record)[8] for the court's review: the pertinent employee benefit plan, the Health Savings Account (HSA) Plan AII9 of InMoment employee welfare benefit plan (Plan) under which Plaintiff sought coverage for medical treatment, relevant medical records, correspondence, the independent external review determination, and other documents which were considered during Plaintiff's claim and appeal review process.

The court has reviewed the complete briefing for both motions for summary judgment and the Administrative Record.[9] Based on the facts provided in the Administrative Record, summary judgment for Defendant is appropriate and the court grants Defendant's Motion for Summary Judgment in total. The court denies Plaintiff's Motion for Summary Judgment.

## BACKGROUND

### Terms of the Plan and Discretionary Authority

During the relevant period, Plaintiff was a beneficiary under the Plan that is governed by ERISA.[10] The Plan benefits are funded by a group insurance policy issued and administered by Defendant.[11] The Plan identifies Defendant as the designated claims fiduciary.[12] The Plan also identifies Defendant and employer InMoment as joint Plan administrators.[13] According to the "Interpretation of Benefits" provision of the plan, benefits under the Plan "will be paid only if [United] decide[s] in [its] discretion that [the covered person is] entitled to them. [United] also

---

[8] Administrative Record, ECF No. 53, filed under seal December 10, 2019.

[9] The court notes that Plaintiff also filed a statement of subsequent authority. *See* Plaintiff's Notice of Supplemental Authority, ECF No. 71, filed July 24, 2020. However, the court has reviewed that filing and has determined that the case offered therein, a nonbinding case from another district, has no bearing on the central, dispositive issues of this case.

[10] Amended Complaint at 2, Administrative Record at 161.

[11] Administrative Record at 1, 64.

[12] *Id.* at 161.

[13] *Id.*

ha[s] discretion to determine eligibility for Benefits and to interpret the terms and conditions of the benefit plan."[14] The Plan also states that United may delegate its discretionary authority "to other persons or entities that provide services in regard to the administration of the Policy."[15] In turn, according to the Plan:

> [T]he Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given deference and be legally binding on all parties and subject to review by a legal authority only to the extent the decision was arbitrary and capricious.[16]

As to matters pertaining to mental health and substance abuse disorder treatment, the Plan vests this discretionary authority in United Behavioral Health (UBH).[17] Medical services will be not be covered under the Plan unless they are "Medically Necessary," as that term is defined in the Plan.[18] According to the Plan, "Medically Necessary" is defined as "health care services provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance-related and addictive disorders, condition, disease or its symptoms, that are all of the following as decided by us or our designee . . . [i]n accordance with Generally Accepted Standards of Medical Practice."[19]

"Generally Accepted Standards of Medical Practice" as established in the Plan means:

> [S]tandards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, relying primarily on controlled clinical trials, or, if not available,

---

[14] *Id.* at 94.

[15] *Id.*

[16] *Id.* at 161–162.

[17] *Id.* at 48.

[18] *Id.* at 99.

[19] *Id.* at 104.

> observational studies from more than one institution that suggest a causal relationship between the service or treatment and health outcomes.[20]

And according to the Plan:

> If no credible scientific evidence is available, then standards that are based on Physician specialty society recommendations or professional standards of care may be considered. We reserve the right to consult expert opinion in determining whether health care services are Medically Necessary. The decision to apply Physician specialty society recommendations, the choice of expert and the determination of when to use any such expert opinion, shall be determined by us.[21]

Continuing as to the meaning and application of "Generally Accepted Standards of Medical Practice," the Plan states:

> We develop and maintain clinical policies that describe the Generally Accepted Standards of Medical Practice scientific evidence, prevailing medical standards and clinical guidelines supporting our determinations regarding specific services. These clinical policies (as developed by us and revised from time to time), are available to Covered Persons on www.myuhc.com or by calling Customer Care at the telephone number on your ID card, and to Physicians and other health care professionals on UnitedHealthcareOnline.[22]

Coverage is provided in the Plan for Medically Necessary Mental Health Services, which "include those received on an inpatient or outpatient basis in a Hospital, an Alternate Facility or in a provider's office" and are "provided by or under the direction of a properly qualified behavioral health provider."[23] As to these mental health services, the Plan defines "Residential Treatment" as "treatment in a facility which provides Mental Health Services or Substance Use Disorder Services treatment" and which meets certain requirements, including that the facility "provides a program of treatment under the active participation and direction of a Physician and approved by the Mental Health/Substance Use Disorder Designee."[24]

---

[20] *Id.*

[21] *Id.* at 105

[22] *Id.*

[23] *Id* at 48.

[24] *Id.* at 107.

### The Guidelines UBH Applies to Residential Treatment Centers Providing Mental Health Services

UBH has formulated "Level of Care Guidelines" (UBH Guidelines) which it uses in its benefit determinations.[25] Under the UBH Guidelines, a Residential Treatment Center (RTC) is defined as a

> [F]acility-based program which delivers 24-hour/7-day assessment and diagnostic services, and active behavioral health treatment to members who do not require the intensity of nursing care, medical monitoring and physician availability offered in Inpatient. The course of treatment is focused on addressing the member's condition to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care or no longer requires treatment. The member's condition includes consideration of the acute and chronic symptoms in the member's history and presentation, including co-occurring behavioral health or medical conditions, informed by information collected by the provider following evaluation and treatment planning as described in Common Clinical Best Practices.[26]

The "Common Clinical Best Practices" referred to in the UBH Guidelines specify that, as part of the treatment at an RTC, "[t]he psychiatrist, in conjunction with the treatment team, completes the initial evaluation commensurate with the member's needs, no later than 24 hours following admission[,]" that "[d]uring admission, a psychiatrist is available to consult with the program during and after normal program hours[,]" and that "[a] psychiatric consultation occurs at least weekly commensurate with the member's needs."[27]

### UBH's Investigation of Avalon Hills Resulting in the Suspension of the Authorization for Care

On or about April 20, 2018, while performing a case consultation with the staff at the Avalon Hills Treatment Center (Avalon Hills) in Cache Valley, Utah UBH's Regional Medical Director, Randall Solomon, M.D., learned that Avalon Hills allegedly had restrained a patient on

---

[25] *Id.* at 165.

[26] *Id.* at 192

[27] *Id.* at 193.

two occasions.[28] Dr. Solomon then contacted Utah state authorities.[29] During this time, UBH was also concerned that Avalon Hills was not complying with the UBH Guidelines' Common Clinical Best Practices in that residential treatment professional services were being provided by a family nurse practitioner and a pediatrician rather than a psychiatrist.[30]

Ten days later, on April 30, 2018, UBH informed Avalon Hills via a letter that "[d]ue to lack of appropriate medical oversight for the residential rehabilitation and partial hospitalization levels of care, [UBH] is temporarily suspending approval of authorization and claims may be subject to non-payment for these levels of care."[31] Although discussions continued between UBH and Avalon Hills, on May 23, 2018, UBH sent a letter to Avalon Hills stating that, because Avalon Hills "is not providing treatment in accordance with" the UBH Guidelines for Residential Treatment and Partial Hospitalization levels of care, UBH "remains unable to allow authorization and claims may be subject to non-payment.[32]

### Plaintiff Seeks Treatment at Avalon Hills

In May of 2018, Plaintiff was suffering from serious mental health issues, including a significant eating disorder, bulimia nervosa, as well as major depressive disorder and generalized anxiety.[33] As a dependent, Plaintiff was a covered individual under the Plan. [34]

---

[28] *Id.* at 760

[29] *Id.*

[30] *Id* at 711, 712, and 746.

[31] *Id.* at 783.

[32] *Id.* at 814.

[33] *Id.* at 642, 656.

[34] *Id.* at 48.

6

On May 9, 2018, Avalon Hills contacted UBH via telephone seeking authorization for coverage of Plaintiff's residential treatment of her mental health issues.[35] Avalon Hills indicated that it was planning to admit Plaintiff the following day.[36] Aware of the recent suspension of authorization, Avalon Hills sought a "Single Case Agreement" with UBH authorizing payment.[37] During the May 9, 2018 call, UBH reiterated that coverage was unavailable because all authorizations for residential treatment level of care at Avalon Hills had been suspended due to a lack of appropriate medical oversight.[38] Plaintiff was admitted to Avalon Hills on May 10, 2018.[39] Upon admission to Avalon Hills, Plaintiff had an outpatient appointment with a non-Avalon Hills psychiatrist on May 11, 2018 and her next appointment was scheduled for a month later, June 11, 2018.[40] Plaintiff's treatment plan included the direction that she was "to see psychiatrist monthly."[41]

UBH provided an initial accommodation and approved Plaintiff's claim for benefits for residential treatment at Avalon Hills from May 10, 2018 to May 13, 2018, but denied her claim for benefits beginning May 14, 2018 and forward because all authorizations for residential treatment level of care at Avalon Hills had been suspended due to a lack of appropriate medical oversight.[42] On May 15, UBH also informed Avalon Hills that coverage for Plaintiff's treatment would not be authorized beyond May 13, 2018, again because of the lack of appropriate medical

---

[35] *Id.* at 641.
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 643.
[40] *Id.* at 668, 672.
[41] *Id.* at 648.
[42] *Id.* at 643–44, 649–51.

7

oversight.[43] At this time, UBH informed Avalon Hills that UBH would work with Plaintiff, her family and Avalon Hills "to transition [Plaintiff] to another facility."[44] That same day, UBH provided Avalon Hills and Plaintiff's parents with a list of in-network facilities that UBH had confirmed would be able to provide residential treatment that would address Plaintiff's medical needs and that would be covered by UBH.[45] These identified authorized facilities were located out of state: Rosewood Centers for Eating Disorders in Arizona and Eating Recovery Centers in Denver, Colorado.[46]

To facilitate transfer to one of these facilities, UBH further approved coverage for Plaintiff's residential treatment at Avalon Hills from May 14, 2018 to May 16, 2018.[47] UBH contacted Plaintiff's father to inform him of the accommodation ahead of transfer to another facility, but he responded that he did not want Plaintiff to be treated out of state.[48]

### The Adverse Benefit Determination, Subsequent Appeal, and Complaint

On May 16, 2018, Dr. Solomon issued an initial adverse benefit determination on Plaintiff's claim for continuing RTC level of care treatment at Avalon Hills.[49] In this determination, Dr. Solomon included the finding that Plaintiff's residential treatment at Avalon Hills could not be approved beyond May 16, 2018 because this facility did not meet UBH Guidelines for either the residential treatment or partial hospitalization level of care "as they do

---

[43] *Id.* at 652–53.

[44] *Id.* at 653.

[45] *Id.*

[46] *Id.* at 653–654.

[47] *Id.* at 655.

[48] *Id.*

[49] *Id.* at 658.

not have the appropriate medical oversight."[50] Dr. Solomon noted that UBH would continue "to approve [P]laintiff's residential treatment" at another facility."[51]

Dr. Solomon's May 16, 2018 initial adverse benefit determination was then memorialized in an initial adverse benefit determination letter dated May 24, 2018, which stated that coverage for Plaintiff's residential treatment at Avalon Hills was available through May 16, 2018 but not beyond that date due to Avalon Hills' failure to provide medical oversight in compliance with the UBH Guidelines.[52] The same letter also stated that UBH was "continuing to approve Residential treatment, but at another facility."[53] This letter included information as to where Plaintiff could locate and review the UBH Guidelines.[54] The initial adverse benefit determination letter also advised Plaintiff and Avalon Hills of their appeal rights.[55] On May 17, 2018, Plaintiff's father once again informed Dr. Solomon that he was "not interested at this time of [sic] moving his daughter" to one of the facilities for which UBH had approved residential treatment coverage.[56]

On May 24, 2018, Avalon Hills submitted an urgent first-level appeal of UBH's initial adverse benefit determination.[57] The appeal was reviewed by a UBH Associate Medical Director, Thomas Hamlin, M.D.[58] Dr. Hamlin noted that Avalon Hills did not have the

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at 476–77.

[53] *Id.* at 476.

[54] *Id.* at 478.

[55] *Id.* at 478–79.

[56] *Id.* at 663.

[57] *Id.* at 681.

[58] *Id.*

"appropriate medical oversight" and that Plaintiff had "both in-network and out-of-network benefits available and can be transferred to the facility that is available for authorization."[59]

On May 25, 2018, Dr. Hamlin issued a letter that upheld on appeal the initial adverse benefit determination.[60] In that letter, Dr. Hamlin stated that coverage was not available for Plaintiff's residential treatment at Avalon Hills as of May 17, 2018 and that Plaintiff could "continue care in the Mental Health Residential Treatment Center setting at another facility which is available for authorization."[61] Once more, this letter included information as to where Plaintiff could locate and review the UBH Guidelines.[62] The May 25, 2018 letter upholding the initial adverse benefit determination informed Plaintiff and Avalon Hills of their right to submit a second-level appeal of the initial adverse benefit determination.[63] However, neither Plaintiff nor Avalon Hills submitted a second-level appeal of UBH's initial adverse benefit determination.[64] Plaintiff was discharged from Avalon Hills on July 7, 2018.[65]

On August 24, 2018, Plaintiff filed the present suit.[66] In her complaint, Plaintiff asserts three causes of action: 1) improper denial of benefits under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) violations of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1; and 3) breach of fiduciary duty under 29 U.S.C. § 1104, but specifically seeking relief pursuant to 29 U.S.C. § 1132(a)(3).[67] As relief, Plaintiff seeks: 1) an order against Defendant requiring payment of

---

[59] *Id.*

[60] *Id.* at 497–98.

[61] *Id.* at 498.

[62] *Id.* at 500.

[63] *Id.* at 499–500.

[64] Defendant's Motion for Summary Judgment at 20.

[65] Administrative Record at 294, 374–378.

[66] Complaint, ECF No. 2, filed August 24, 2018.

[67] Amended Complaint at 5–8.

health insurance benefits due to Plaintiff under the Plan; 2) injunctive relief ordering Defendant to follow ERISA section 503 and the claims regulation in making benefit determinations under the Plan and in informing Plaintiff of the basis for that determination; 3) injunctive and other equitable relief requiring UnitedHealthcare to follow the terms of the Plan in making benefit determinations and to refrain from applying internal guidelines inconsistent with the terms of the Plan and the requirements of ERISA; and 4) attorney fees and costs.[68]

## STANDARD OF REVIEW

In an ERISA case where both parties have moved for summary judgment, the court does not evaluate whether either of the movants has shown that "that there is no genuine dispute as to any material fact" that would entitle the movant to "judgment as a matter of law" under Fed. R. Civ. P. 56(a). Instead, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[69] The court therefore bases its decision on the supplied Administrative Record and the applicable authorities.

## DISCUSSION

### 1.  The Decision to Deny Plaintiff's Coverage Was Not Arbitrary and Capricious.

When a plaintiff challenges the denial of benefits under ERISA, that denial "must be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[70]

---

[68] *Id.* at 8.

[69] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)

[70] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)

11

In instances where a plan administrator or fiduciary is provided with this discretionary authority, the court is "required to uphold the decision unless [it is] arbitrary and capricious."[71]

Here, the Plan states that the "Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan."[72] UBH is a claim administrator for Mental Health/Substance Use Disorder claims.[73] Accordingly, the arbitrary and capricious standard of review applies.[74]

"In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis."[75] [T]here is no requirement that the basis relied upon be the only logical one or even the superlative one."[76] Scrutinizing the basis involves determining if the "decision resides 'somewhere on a continuum of reasonableness—even if on the low end.'"[77]

In addition to a considering whether the decision is predicated on a reasoned basis, this court must also consider whether the decision is rooted in substantial evidence, as a lack thereof

---

[71] *Adamson v. Unum Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (*citing Firestone Tire & Rubber Co*. 489 U.S at 113–15).

[72] Administrative Record at 161.

[73] Amended Complaint at 2.

[74] The court notes that Plaintiff, in her own motion for summary judgment, argues that there is a conflict of interest when a Plan administrator both insures and determines the claims for benefits. Plaintiff's Motion for Summary Judgment at 6. Such an instance would "trigger[] a less deferential standard of review. *Fought v. UNUM Life Ins. Co. Of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004). However, Defendant correctly notes that determining whether an administrator operated under a conflict of interest involves a multi-factor test, and that Plaintiff has offered no evidence supporting these factors. Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 23–24( *citing Kimber v. Thiokol*, 196 F.3d 1092, 1098 (10th Cir. 1999)). In her reply, Plaintiff appears to concede this, as she does not respond to any of Defendant's arguments or cite authorities on this point. *See* Plaintiff's Reply and Memorandum in Further Support of her Motion for Summary Judgment at 2–8. As such, the court's analysis will proceed under the more deferential arbitrary and capricious standard and will not consider the unsupported conflict of interest assertion.

[75] *Adamson*, 455 F.3d at 1212.

[76] *Id.*, citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999).

[77] *Id.*

indicates that the decision was arbitrary and capricious.[78] "Substantial evidence means more than a scintilla, of course, yet less than a preponderance."[79]

Here, Defendant argues that denying Plaintiff's claim for benefits was a reasoned decision supported by substantial evidence.[80] As Defendant offers, the denial of coverage for Plaintiff's requested RTC treatment at Avalon Hills was due to UBH's prior decision to suspend authorization for that level of care at Avalon Hills.[81] UBH suspended this authorization because of the concern that Avalon Hills was not in compliance with the applicable UBH Level of Care Guidelines.[82] Specifically, UBH had noted that Avalon Hills did not have a psychiatrist on its staff and patients were not seen by a psychiatrist at least once a week, contrary to the language of the Clinical Best Practices set forth in the Guidelines for both residential treatment and partial hospitalization levels of care.[83]

Plaintiff argues that the decision to suspend authorization for RTC care at Avalon Hills—which precipitated the decision to deny Plaintiff's claim for treatment at Avalon Hills—was "inconsistent with the plan terms."[84] In support of this argument, Plaintiff points out that the definition of "Residential Treatment" refers to a facility that "provides a program of treatment under the active participation and direction of a Physician" and does not specify that this physician be a psychiatrist.[85] This argument, however, confuses the requirements for

---

[78] *Id.*

[79] *Id.*

[80] Defendant's Motion for Summary Judgment at 24–30.

[81] *Id.* at 25.

[82] *Id.*

[83] *Id.*

[84] Plaintiff's Motion for Summary Judgment at 9; Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 9.

[85] Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 7.

13

qualification as a residential treatment facility with the requirements for covered mental health services. The Plan's section on "Benefits for Covered Health Services" provides that covered mental health services "must be provided by or under the direction of a properly qualified *behavioral health provider.*"[86] The record is clear that care at Avalon Hills was provided by a nurse practitioner and a pediatrician, not a behavioral health provider. And the Plan also provides that the program must be "*approved* by the Mental Health/Substance Use Disorder Designee."[87] As noted above, the record is clear that it was not approved at the relevant times.

Thus, the decision to deny Plaintiff's claim for benefits at Avalon Hills is a reasoned decision supported by substantial evidence. The decision to suspend authorization for RTC care at Avalon Hills had been made prior to Plaintiff's request for coverage and that decision was made in accordance with both the language of the Plan ("Mental Health Services . . . . must be provided by or under the direction of a properly qualified *behavioral health provider*" and UBH's application of its Guidelines to Avalon Hills.[88] Those UBH Guidelines clearly specify that they are "used to make coverage determinations . . . ."[89] Given the discretionary authority provided to UBH to approve care plans, the application of these Guidelines to Avalon Hills and the decision to suspend the authorization of RTC treatment at Avalon Hills is not inconsistent with the Plan terms. And because UBH previously had made the decision to suspend RTC treatment authorization at Avalon Hills, the decision to deny Plaintiff's claim for treatment at this facility certainly resides on a continuum of reasonableness.

---

[86] Administrative Record at 48, emphasis added.

[87] Administrative Record at 107.

[88] *See id.* at 783, 814.

[89] *Id.* at 180.

Substantial evidence also supports this decision: again, the Administrative Record shows that the decision to suspend authorization occurred on April 30, 2018 after UBH began looking into matters at Avalon Hills based on other concerns.[90] The Administrative Record also demonstrates that Plaintiff was notified of UBH's decision, despite the argument that this rationale was not communicated to her:[91] the initial adverse benefit determination letter and the letter upholding the initial adverse benefit determination outlined that coverage for RTC treatment at Avalon Hills as of May 17, 2018 was not available due to the lack of appropriate medical oversight at that facility in compliance with the Guidelines.[92] As the Administrative Record demonstrates, the decision to deny continued coverage for Plaintiff for RTC treatment at Avalon Hills is not arbitrary and capricious. The denial is a reasoned decision, supported by substantial evidence. Summary judgment is appropriate for Defendant and its motion is granted as to Plaintiff's first cause of action. Plaintiff's motion for summary judgment on this cause of action is denied.

## 2. Defendant Provided the Specific Reason for Denial of Plaintiff's Coverage Request.

The language in the adverse benefit determination letters also supports the determination that summary judgment for Defendant on Plaintiff's second cause of action is appropriate. As provided at 29 U.S.C. § 1133, when a plan administrator denies a claim for plan benefits, the plan administrator must provide "specific reasons for such denial."[93] The associated federal

---

[90] *Id.* at 783. The court makes no finding as to whether the concerns UBH had about Avalon Hills were factually correct or that anything outside the standard of care occurred there. But the Administrative Record is clear that UBH had concerns and acted on those concerns.

[91] Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 9.

[92] *See id. at* 467–77, 492–93, 497–98.

[93] 29 U.S.C. § 1133(1).

regulation also requires that any denial provide "[r]eference to the specific plan provisions on which the determination is based[.]"[94] The purpose is to "insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case."[95]

The United States Court of Appeals for the Tenth Circuit has recognized that "the reason for the denial must be stated in reasonably clear language[.]"[96] However, the requirement to provide a specific reason for denial in reasonably clear language is not expansive. As this court has acknowledged: "ERISA requires only that a plan administrator give specific reasons, not the reasoning behind the reasons.[97]

UBH is the claim administrator for Mental Health/Substance Use Disorder claims. Both denial letters issued by UBH identified the specific reason why Plaintiff's continued care at Avalon Hills could not be covered: lack of appropriate medical oversight in compliance with the guidelines.[98] The initial adverse benefit determination letter and the letter upholding that denial also both included reference to where Plaintiff could find and review the UBH Guidelines used in coverage determinations, as well as a number to call if help was needed understanding the notice.[99] The reason offered by UBH to Plaintiff is specific and reasonably clear, though it might have been even more specific by referencing the absence of a psychiatrist. The letters referenced UBH's Guidelines, Avalon Hills' failure to comply with those guidelines, and where Plaintiff

---

[94] 29 CFR § 2560.503–1(g)(ii).

[95] *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992).

[96] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (*quoting Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir.1997)).

[97] *Brian C. v. ValueOptions*, 2017 WL 4564737, at *3 (D. Utah Oct. 11, 2017).

[98] *Id.* at 476–77, 497–498.

[99] *Id.* at 478–79, 499–500.

and her family could find those guidelines for review. This was not excellent, but it was adequate on the facts of this case. The record also does not suggest that more specificity in terms of the reason or the plan provisions and guidelines at issue would have made a difference here in permitting Plaintiff "a fair opportunity" to make her case.[100] UBH, and therefore Defendant, sufficiently complied with the ERISA requirements at 29 U.S.C. § 1133, and summary judgment for Defendant and against Plaintiff on Plaintiff's second cause of action is appropriate.

### 3. Plaintiff's Third Cause of Action Is Duplicative of Her First Cause of Action.

Finally, summary judgment for Defendant on Plaintiff's third cause of action for breach of fiduciary duty is appropriate because that cause of action is duplicative of Plaintiff first cause of action and because the record does not support Plaintiff's allegations.. Although captioned as seeking relief under 29 U.S.C. § 1104, Plaintiff's third cause of action specifically seeks relief under a different provision of ERISA, 29 U.S.C. § 1132(a)(3).[101] Under this third cause of action, Plaintiff seeks injunctive relief against Defendant regarding the application of the UBH Guidelines.

Defendant argues that the underlying factual allegations and focus of this cause of action are the same as provided in Plaintiff's first cause of action under 29 U.S.C. § 1132(a)(1)(b):[102] improper application of the Plan language and Guidelines resulting in the denial of benefits.[103] Defendant also argues that 29 U.S.C. § 1104 is not a remedial statute. However, it is unnecessary for the court to address the § 1104 argument because—as set forth below—in instances where a

---

[100] *See Halpin*, 962 F.2d at 689.

[101] Amended Complaint at 5–6.

[102] *Id.* at 7–8.

[103] Defendant's Motion for Summary Judgment at 31–32, Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 37–40.

17

plaintiff seeks relief under 29 U.S.C. § 1132(a)(1)(b) *and* 29 U.S.C. § 1132(a)(3), case law holds that the § 1132(a)(3) claim may be barred.

In *Varity Corp. v. Howe*,[104] the United States Supreme Court called 29 U.S.C. § 1132(a)(3) a "catchall" provision of ERISA, which "offer[s] appropriate equitable relief for injuries caused by violations that [ERISA] does not elsewhere adequately remedy."[105] Citing to the unpublished decision in *Lefler v. United Healthcare of Utah, Inc.*,[106] Defendant asserts that the Tenth Circuit has acknowledged that "consideration of a claim under 29 U.S.C. § 1132(a)(3) is improper" where a plaintiff "states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B)."[107]

In response, Plaintiff argues that her first and second causes are not duplicative because the Supreme Court recognized in *Cigna Corp. v. Amara*[108] that participants in a plan covered by ERISA could pursue a claim for equitable relief under 29 U.S.C. § 1132(a)(3), including make-whole monetary relief to remedy harm suffered as a result of fiduciary breaches, even though they were also seeking benefits under 29 U.S.C. § 1132(a)(1)(B).[109]

The question of whether Plaintiff's third cause of action is the sort that would be permitted under *Amara* hinges on the *injury* alleged in that cause of action. As this court recently announced in a decision that scrutinized the cumulative effects of *Varity*, *Lefler*, and *Amara*: "[u]nder the court's understanding of the rule established in *Varity* and *Amara*, [a] Plaintiff[] may pursue a [29 U.S.C. § 1132(a)(3)] claim where that claim is based on an injury separate and

---

[104] 516 U.S. 489 (1996).

[105] *Id.* at 512.

[106] 72 F.App'x 818, (10th Cir. 2003).

[107] *Id.* at 826.

[108] 563 U.S. 421 (2011).

[109] *See id.* at 442–43.

distinct from the denial of benefits."[110] This is because "*Varity* . . bar[s] plaintiffs from maintaining the same claims under both [29 U.S.C. § 1132(a)(1)(b)] and [29 U.S.C. § 1132(a)(3)] as a way to avoid the more deferential review standard applied to wrongful denial of benefits causes of action under [29 U.S.C. § 1132(a)(1)(b)]."[111]

> More specifically, the court stated:
>
> The class-Plaintiffs in *Lefler* pled a breach of fiduciary duty claim under Section 502(a)(3) that relie[d] on [those] same arguments . . . raised or could have raised under the . . . [29 U.S.C. § 1132(a)(1)(b)] denial of benefits cause of action. Specifically, the class alleged that the plan administrator breached its fiduciary duty by failing to inform the class of [the] discounting practice it used to calculate benefit payments, improperly denying, de facto, benefits under the plan, and failing to follow a Utah law that required insurers to supply detailed payment notification to an insured. The Tenth Circuit found that all of these arguments could also form the basis of the class's [29 U.S.C. § 1132(a)(1)(b)] claims. Because of this finding, the court barred the class's breach of fiduciary duty cause of action because it was duplicative of claims available under its [29 U.S.C. § 1132(a)(1)(b)] denial of benefit cause of action. *Varity* prohibits such duplication of claims to avoid having plaintiffs complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing.[112]

The facts that Plaintiff alleges and the relief she seeks in the third cause of action—even when framed prospectively regarding the future—still focus on benefit determinations made under terms of the Plan and application of the associated UBH Guidelines.[113] Plaintiff is not describing an injury that is separate and distinct from the denial of her Plan benefits. Under *Varity*, this third cause of action cannot be used to address the same injury as in the first cause of action, all without having to apply the deferential, arbitrary and capricious standard of review. The court further finds that the specific acts identified in Plaintiff's third cause of action are not

---

[110] *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1229–30 (D. Utah 2019).

[111] *Id.* (*citing Varity* 516 U.S. at 513–14).

[112] *Id.* at 1221 (internal citations and quotations omitted).

[113] Amended Complaint, 7 ("In making the benefit determinations in this case . . . .").

supported by record evidence and do not support the alleged breach of fiduciary duty.[114] Summary judgment is therefore appropriate for Defendant and its motion is granted. Plaintiff's Motion for Summary Judgment as to this third and final cause of action in her complaint is denied.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment[115] is GRANTED in its entirety. Plaintiff's Motion for Summary Judgment[116] is DENIED in its entirety.

The Clerk is directed to close the case.

Signed January 29, 2021.

BY THE COURT

_____
David Barlow
United States District Judge

---

[114] Plaintiff asserts, "upon information and belief," that Defendant breached its duties by: "(1) failing to ensure that a facility to which it helped send a critically ill young woman met its guidelines for care; (2) after helping Plaintiff obtain admission to Avalon Hills, making a sudden decision to deny coverage of her treatment there and to enforce internal criteria, which were inconsistent with the terms of the governing plan; and (3) suggesting that a fragile and critically ill young woman, with a serious bleeding disorder, get on a plane to travel to a treatment facility in another state, far from her medical specialists and family." Amended Complaint, 7. As noted above, these allegations are not established by evidence of record.

[115] Defendant's Motion for Summary Judgment, ECF No. 52, filed under seal December 10, 2019.

[116] Plaintiff's Motion for Summary Judgment and Memorandum in Support, ECF No. 54, filed December 10, 2020.